# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FREDERICK F. BUTTERS
an individual

Plaintiff

    vs

THE AMERICAN ARBITRATION
ASSOCIATION, INC.
a foreign non-profit corporation

Defendant

Case No.
Hon.

_____/

Frederick F. Butters (P45426)
FREDERICK F. BUTTERS, PLLC
   Attorney for Plaintiff
26677 West 12 Mile Road
Southfield, Michigan 48033
(248) 357-0831
fred@butters-law.com

_____/

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action between these parties or other parties arising out of the same transaction or occurrence as alleged in this complaint.

## THE PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES THAT MAY BE PROPERLY TRIED TO A JURY

1

## I.    Jurisdiction and Venue

1.      Frederick F. Butters, the Plaintiff herein, is an individual who at all times relevant hereto has resided and continues to reside within the geographical confines of the Easteren District of Michigan

2.      At all times relevant hereto the plaintiff conducted continuous and systematic business within the geographical confines of the Eastern District of Michigan

3.      Defendant American Arbitration Association is a non-profit corporation organized and existing under the auspices of the laws of the state of New York

4.      At all times relevant hereto the defendant conducted continuous and systematic business throughout the United States including specifically within the geographical confines of the Eastern District of Michigan

5.      Complete diversity of citizenship exists between the plaintiff and the defendant and therefore between all parties to this action

6.      As set forth in detail hereinafter the amount in controversy exceeds Two Hundred and Fifty Thousand Dollars ($250,000.00)

7.      Jurisdiction and venue are therefore appropriate in this court

## II.    General Allegations Common to All Counts

### A.    Background

8.      The Defendant operates an arbitration service where for a fee it will administer an arbitration proceeding and assign an arbitrator or arbitrators

9.      To service its customers the Defendant maintains several claim specific panels of pre-approved arbitrators who must follow strict continuing education protocols to secure and maintain approval

2

10.     The Defendant charges all arbitrators on its panel a fee in exchange for which the defendant invoices parties to arbitration proceedings on behalf of its arbitrators, receives payment from the parties, and distributes payment to the specific arbitrators

11.     30 years ago, the Plaintiff was appointed to the Defendant's panel of construction arbitrators in 1995 and has maintained continuous presence on the defendants' panel since that time.    In addition to the construction panel, the Plaintiff today is a member of the Defendant's commercial panel and hears cases pursuant to the Defendant's homeowners' and consumer panels as well.

12.     The Plaintiff is also one of the limited number of the Defendant's arbitrators who is appointed to cases for the limited purpose of addressing joiner questions under Rule 7 in various versions of the Defendant's rules governing its arbitration proceedings.

13.     The Plaintiff has complied with all the Defendant's requirements to maintain panel presence and has made timely and full payment of all fees the Defendant charged every year for the privilege of doing so.

14.     Over the 30 years he has served as an arbitrator, the Plaintiff has adjudicated dozens of cases for the Defendant, facilitating the earning substantial revenue for the Defendant in the process.

### B.     History of the Specific Dispute

15.     Prior to 2024 over the entire 30-year period of his arbitrator service the Defendant always forwarded compensation payments to the Plaintiff in the form of paper checks sent by US mail.

16.     In 2024 the Plaintiff was serving on a panel hearing an arbitration which involved many days of hearings, and consumed a large portion of the Plaintiff's available

3

time for an extended period of time.

17.　　Early in 2024, the Defendant's payments to the Plaintiff were slow and fell into arrears.

18.　　The Plaintiff made inquiry of the Defendant, so the Defendant was aware of the Plaintiff's concerns. Further, the Defendant is aware that the Plaintiff is a sole practitioner and that the lack of payments from the Defendant for time the Plaintiff had invested greatly impacted Plaintiff's overall income.

19.　　The Plaintiff inquired as to how payment could be expedited and the Defendant advised that electronic payment would accomplish that goal

20.　　The Defendant urged the Plaintiff to authorize electronic payment

21.　　The Plaintiff did not authorize electronic payment at that time, preferring instead to await a time at which he had taken steps necessary to protect the integrity of his bank account

22.　　As the Plaintiff had been a victim of identity theft in the past, his concerns lay primarily with the degree to which his bank accounts would remain secure.

23.　　After consulting his bank, the Plaintiff was advised that a Uniform Payment Information Code (a "UPIC") could be established.

24.　　With a UPIC in place the Plaintiff could authorize payments into his account while disclosing only the UPIC such that the actual bank account number and routing information would be disclosed.

25.　　Therefore, with a UPIC in place in the event information held by others was compromised the Plaintiffs' bank account information would remain secure in that only the UPIC would have been subject to any data breach disclosure, and it is impossible to

4

access the Plaintiff's bank account, other than to make payments into it, using the UPIC only.

26.     The Plaintiff secured a UPIC and on November 7, 2024, for the first time ever, authorized the Defendant to forward payments electronically to his bank at utilizing his UPIC.

27.     Prior to November 7, 2024, the Plaintiff had not authorized the defendant to make payment to him by any means or method other than paper checks sent through the US Mail.

28.     In July of 2024 the Plaintiff was engaged on several arbitration proceedings administered by the Defendant including but not limited to the large, complex matter alleged above.

29.     Despite the fact that the Plaintiff submitted timely and proper invoices to the Defendant's case administrator as instructed, the Defendant continued to be in arrears on payments to the Plaintiff against his invoices.

30.     In an effort to determine why he had not been paid the Plaintiff began sending emails and placing phone calls to the Defendant's case administrator and leaving messages expressing concern.

31.     Despite knowing that Defendant's lack of payments was distressing to Plaintiff, Defendant's case administrator knowingly, intentionally and wrongfully refused to take the Plaintiff's calls or respond in any manner

32.     The Plaintiff left voice mail with each call along with inquiry as to payment status and the contact increased in frequency to almost a daily basis, commensurate with Plaintiff's level of stress.

5

33.    The Plaintiff in his voice mails even indicated he was forced to consider suspension of his service on the panel he was serving on that was hearing the lengthy arbitration.

34.    The Defendant's case administrator still refused all efforts the Plaintiff made to make contact.

35.    Rather than communicate with the Plaintiff, the Defendant's case administrator called the arbitrator who chaired the arbitration panel the Plaintiff was sitting on and inquired as to what he knew of the Plaintiff's intentions.

36.    The panel chair called the Plaintiff and reported his contact with the Defendant's case administrator

37.    The panel chair then gave the Plaintiff the direct cell phone number for the Defendant's case administrator

38.    The Plaintiff promptly contacted the Defendant's case administrator employing the direct cell phone number, but the Defendant's case administrator yet again refused to accept his call.

39.    Instead of contacting the Plaintiff the Defendant's case administrator circulated an email internally with the Defendant's employees noting the Plaintiff was again inquiring as to payment.

40.    In the detail as alleged below, the reason the Defendant's case administrator did not return take or return the Plaintiff's calls or emails is because Defendant knew by then it had negligently paid Plaintiff's compensation to a fraudster, but refused to disclose this fact to Plaintiff.

6

### C.    Lack of Payment

41.    Eventually the defendant's finance director called the plaintiff to discuss payments.

42.    In early December 2024 the defendant's case administrator and finance director forwarded an email to the Plaintiff which included a form whereby the Defendant alleged the Plaintiff, for the first time in his entire 30 tenure as an arbitrator, had allegedly authorized payment to be made to an apparent accounting firm rather than to him directly (refer to Exhibit "1")

43,    Although the Plaintiff has no direct knowledge of any payments other than what the Defendant has represented, the Defendant made substantial payments due the Plaintiff to an unrelated and unknown third party.

44.    At a minimum the Defendant made the following payments to someone other than the Plaintiff

44a.    $875.00 on October 8, 2024

44b.    $3,225.00 on November 5, 2024

44c.    $3,900.00 on an unknown date

44d.    $10,129.00 on August 20, 2024

44e.    $10,850.00 on September 18, 2024

45.    Additional sums are owed to the Plaintiff that the Defendant has not explained

46.    The funds described above were earned by the Plaintiff from June to December of 2024

47.    The plaintiff immediately objected, noted the form was entirely fraudulent and requested a zoom meeting with the Defendant's representatives to discuss and review

7

what the Defendant contended had happened.

48.    The Defendant's finance director and case administrator eventually consented and participated in a zoom meeting, but rather than address the substance of the apparent occurrence in a meaningful manner, the Defendant's case administrator made excuses, refused to acknowledge the Defendant had caused any problems, and cast blame on the Plaintiff.

49.    During that zoom meeting the Defendant demanded that the Plaintiff procure written statements proving he had not received the funds from his bank

50.    Although the Plaintiff attempted to do so, his bank noted it would not provide any such writings, but that it would participate in a conference with the Defendant to answer questions and offer any explanations the Defendant required.

51.    The Plaintiff passed that offer along to the Defendant, but the Defendant never accepted or for that matter never replied in any form or manner.

52.    The Plaintiff summarized the discussion and the occurrences as he understood them and forwarded them to the Defendant's finance director and case administrator by email.

53.    The Defendant ignored that email

54.    Several days later the Plaintiff followed up with a subsequent email inquiry coupled with a firm demand for payment

55.    The Defendant's in-house counsel replied to the Plaintiff, complaining about Plaintiff's emails, reiterated the Defendant's prior excuses and denials, and refused to make the payments due unless the Defendant could recover the funds it misdirected

56.    The Defendant is not making reasonable, or for that matter any effort

8

whatsoever to recover any funds such that its suggestion to the Plaintiff is merely a false delaying tactic and an excuse.

57.     The funds are lost forever and the Defendant will never recover them

58.     The Plaintiff replied by email reiterating his demand.   That email also included specific precedent opinions which demonstrated the plaintiff's position was sound.

59.     The Defendant did not reply and did not pay the Plaintiff necessitating this lawsuit.

60.     As alleged hereinafter the Defendant is guilty of a plethora of failures

61.     Properly addressing even one of the defendants' failures would have prevented the harm complained of herein

62.     Taken as a whole the Defendants' failures represent gross shortcomings, callous disregard, and outright incompetence that the Defendant seeks to lay unjustly at the feet of the Plaintiff including in, but not limited to the following regards.

## D.     The Defendant Utterly Fails to Investigate the Bogus Payment Authorization

63.     The alleged authorization form (Exhibit "1") dated July 29, 2024, listed the alleged request as a "change" to the Plaintiff's authorized electronic fund payment account.

64.     In fact, the Plaintiff had no authorized electronic payment account with the Defendant on July 29, 2024, having first established such an account on November 7, 2024.

65.     On July 29, 2024, the Defendant actually knew the Pplaintiff had no authorized electronic payment account with the Plaintiff that could have been "changed"

9

66.     That reality would have been apparent to the Defendant had it conducted even a cursory investigation.

67.     Despite the unusual nature of the alleged electronic payment change authorization, the Defendant did not contact the Plaintiff to verify the alleged "change" to the Plaintiff's then non-existent electronic payment authorization and in fact conducted no evaluation or investigation of any sort whatsoever

68.     The Defendant proceeded to make payment of substantial sums owed to the Plaintiff to a third party fraudster on the strength of that unverified "change" form.

69.     As alleged under the specific count portion of this complaint in greater specific detail, the Defendant had an obligation and duty to conduct at a minimum a reasonable investigation, evaluation, and verification

70.     Had the Defendant invested as little as 5 minutes, the Defendant could have easily contacted the Plaintiff and investigated what was an unusual and unprecedented alleged request.   Had the Defendant done so the consequences of its failure to do so would have been easily averted.

71.     Rather than conduct any investigation, evaluation or verification of any sort whatsoever, the Defendant instead did absolutely nothing.

## E.     The Defendant Utterly Fails to Investigate the Bogus Accounting Firm

72.     The alleged authorization form (Exhibit "1") dated July 29, 2024 listed "Rasal Basal Accounting" as the recipient for funds owed to the Plaintiff.

73.     Rasal Rasal Accounting never existed.

74.     That reality would have been apparent to the Defendant had it conducted even a cursory investigation.

10

75. Despite the unusual nature of the alleged electronic payment change authorization, and the specific name listed as the recipient of the Plaintiff's funds, the Defendant did not contact the Plaintiff to verify the Plaintiff's alleged directive to pay funds owed to him over to any third party instead of him directly, and in fact conducted no evaluation or investigation into the nature or existence of "Basal Rasal Accounting" of any sort whatsoever.

76. The Defendant proceeded to make payment of substantial sums owed to the Plaintiff on the strength of the unverified representation to the effect that the Plaintiff had somehow authorized payment of sums due him to a non-existent entity with a patently questionable name.

77. As alleged under the specific count portion of this complaint in greater specific detail, the Defendant had an obligation and duty to conduct at a minimum a reasonable investigation, evaluation, and verification

78. Had the Defendant invested as little as 5 minutes, the defendant could have easily verified the existence of Basal Rasil Accounting or could have contacted the Plaintiff and investigated what was an unusual and unprecedented alleged request. Had the Defendant done so the consequences of its failure to do so would have been easily averted

79. Rather than conduct any investigation, evaluation or verification of any sort whatsoever, the Defendant instead did absolutely nothing.

### F. The Defendant Utterly Fails to Investigate the Bogus Accounting Firm's Bogus Email Address

80. The alleged authorization form (Exhibit "1") dated late July 29, 2024 listed the email address for "Rasal Basal Accounting" as "rasal.basal@accountant.com".

11

81.     In fact, "rasal.basal@accountant.com" is a non-working email address.

82.     That reality would have been apparent to the Defendant had it conducted even a cursory investigation.

83.     Despite the non-working email address Exhibit "1" reflected, the Defendant did not contact the Plaintiff to verify the Plaintiff's alleged directive to pay funds owed to him over to any third party instead of him directly, and in fact conducted no evaluation or investigation into the nature or existence of the legitimacy of the rasal.basal@accountant.com email address of any sort whatsoever

84.     The Defendant proceeded to make payment of substantial sums owed to the plaintiff on the strength of the unverified representation to the effect that the plaintiff had somehow authorized payment of sums due him to a non-existent entity with a patently questionable name and a non-working email address.

85.     As alleged under the specific count portion of this complaint in greater specific detail, the Defendant had an obligation and duty to conduct at a minimum a reasonable investigation, evaluation, and verification

86.     Had the Defendant invested as little as 5 minutes, the Defendant could have easily discovered the bogus email address or could have contacted the Plaintiff and investigated what was an unusual and unprecedented alleged request.  Had the Defendant done so the consequences of its failure to do so would have been easily averted.

87.     Rather than conduct any investigation, evaluation or verification of any sort whatsoever, the Defendant instead did absolutely nothing.

### G.     The Defendant Utterly Fails to Investigate the Bogus Accounting Firm's Bogus Phone Number

12

88.     The alleged authorization form (Exhibit "1") dated July 29, 2024 listed the phone number for "Rasal Basal Accounting" as "(248) 514-4349".

89.     In fact, that phone number connects not to any accounting firm but instead to a psychiatrist clinic in Southfield Michigan.

90.     That reality would have been apparent to the defendant had it conducted even a cursory investigation.

91.     An investigation would have been as simple as calling the number.

92.     Despite the bogus phone number Exhibit "1" reflected, the Defendant did not contact the Plaintiff to verify the Plaintiff's alleged directive to pay funds owed to him over to any third party instead of him directly, and in fact conducted no evaluation or investigation into the nature or existence of the legitimacy of the Basal Rasal Accounting telephone number of any sort whatsoever

93.     The Defendant proceeded to make payment of substantial sums owed to the plaintiff on the strength of the unverified representation to the effect that the Plaintiff had somehow authorized payment of sums due him to a non-existent entity with a patently questionable name and an inaccurate phone number.

94.     As alleged under the specific count portion of this complaint in greater specific detail, the Defendant had an obligation and duty to conduct at a minimum a reasonable investigation, evaluation, and verification

95.     Had the Defendant invested as little as 5 minutes, the Defendant could have easily called the phone number and discovered the inaccuracy or could have contacted the Plaintiff and investigated what was an unusual and unprecedented alleged request. Had the Defendant done so the consequences of its failure to do so would have been

13

easily averted.

96.     Rather than conduct any investigation, evaluation or verification of any sort whatsoever, the Defendant instead did absolutely nothing.

### H.     The Defendant Utterly Fails to Investigate the Bogus Accounting Firm's Bogus Bank Branch

97.     The alleged authorization form (Exhibit "1") dated July 29, 2024 listed a Wells Fargo branch bank in Middletown Delaware nearly 1,000 miles away from the plaintiff's offices in Michigan.

98.     Why an accounting firm with a 248 area code (suburban Detroit, Michigan) would use a bank branch 1,000 miles away is not at all clear and raises significant questions as to the accuracy of the Exhibit "1" form.

99.     That reality would have been apparent to the Defendant had it conducted even a cursory investigation.

100.    Despite the questionable nature of the bank branch Exhibit "1" reflected, the Defendant did not contact the Plaintiff to verify the plaintiff's alleged directive to pay funds owed to him over to any third party instead of him directly, and in fact conducted no evaluation or investigation into the nature or existence of the legitimacy of the alleged uses of a remote bank branch.

101.    The Defendant proceeded to make payment of substantial sums owed to the plaintiff on the strength of the unverified representation to the effect that the Plaintiff had somehow authorized payment of sums due him to a non-existent entity with a patently questionable name, and a bank branch some 1,000 miles distant.

102.    As alleged under the specific count portion of this complaint in greater specific detail, the Defendant had an obligation and duty to conduct at a minimum a reasonable

14

investigation, evaluation, and verification

103.   Had the Defendant invested as little as 5 minutes, the Defendant could have noted the questionable nature of the remote bank branch and discovered the inaccuracy or could have contacted the Plaintiff and investigated what was an unusual and unprecedented alleged request.   Had the Defendant done so the consequences of its failure to do so would have been easily averted.

104.   Rather than conduct any investigation, evaluation or verification of any sort whatsoever, the defendant instead did absolutely nothing.

### I.   The Defendant Utterly Fails to Investigate the Bogus Bank Branch's Bogus Phone Number

105.   The alleged authorization form (Exhibit "1") dated late July 2024 listed the phone number for the Wells Fargo bank branch "Basal Rasal Accounting" allegedly used as "(503) 643-4876".

106.   In fact, that phone number is a non-working number.

107.   In addition, the area code for the phone number for the Wells Fargo bank branch "Basal Rasal Accounting" allegedly used was "(503)".

108.   Although the situs of the bank branch "Basal Rasal Accounting" allegedly used was New Jersey, the (503) area code is assigned to Portland Oregon.

109.   That reality would have been apparent to the Defendant had it conducted even a cursory investigation.

110.   Despite the inaccurate phone numbers Exhibit "1" reflected, the Defendant did not contact the Plaintiff to verify the Plaintiff's alleged directive to pay funds owed to him over to any third party instead of him directly, and in fact conducted no evaluation or investigation into the nature or existence of the legitimacy of the Wells Fargo telephone

15

number of any sort whatsoever

111. The Defendant proceeded to make payment of substantial sums owed to the plaintiff on the strength of the unverified representation to the effect that the Plaintiff had somehow authorized payment of sums due him to a non-existent entity with a patently questionable name and an inaccurate phone number, to a branch bank 1,000 miles away allegedly located in New Jersey, which has a non-working telephone number with a Portland Oregon area code.

112. As alleged under the specific count portion of this complaint in greater specific detail, the Defendant had an obligation and duty to conduct at a minimum a reasonable investigation, evaluation, and verification

113. Had the Defendant invested as little as 5 minutes, the Defendant could have easily called the phone number and discovered the inaccuracy or could have contacted the Plaintiff and investigated what was an unusual and unprecedented alleged request. Had the Defendant done so the consequences of its failure to do so would have been easily averted

114. Rather than conduct any investigation, evaluation or verification of any sort whatsoever, the Defendant instead did absolutely nothing.

### Count I
### Breach of Contract

115. The Plaintiff re-alleges the substance of paragraph(s) 1 through 114 above, as if such were set out and repled verbatim herein.

116. For 30 years the plaintiff contracted with the defendant to allow himself to be listed as one of the defendant's panel arbitrators.

117. Over that period of time the Plaintiff successfully and competently completed

16

all of the training the Defendant required of its panel arbitrators, in many cases paying the Defendant for the privilege of accessing that training material.

118. In addition, the Plaintiff promptly and fully paid every annual assessment the defendant required as a condition to serve on the Defendant's panel of arbitrators, including for several years when he was not assigned as an arbitrator at all.

119. In total the Plaintiff paid the defendant thousands of dollars in exchange for listing on the Defendants' panel(s)

120. Over the past 30 years the plaintiff has been assigned on several cases and has faithfully and unwaveringly conducted each and every assignment he received in a proper and timely manner consistent with all of the defendants' requirements.

121. The Defendant earned substantial income on account of the Plaintiff's efforts.

122. The Plaintiff has fully honored all obligations imposed on him under his contract with the Defendant.

123. In addition to listing the Plaintiff as a potential arbitrator for various cases, the Plaintiff's contract with the Defendant required the Defendant to invoice parties, receive and account for payments on his behalf, account for the funds received, and forward to the Plaintiff what he was owed for his services.

124. In addition to listing the Plaintiff as a potential arbitrator for various cases, the Plaintiff's contract with the Defendant required the Defendants' case administrator to be available to the Plaintiff and to engage with the Plaintiff to assist if or as issues arose during the pendency of on-going arbitration proceedings.

125. Accordingly, in the course of handling the Plaintiff's monies, the Defendant owed the Plaintiff at a minimum duty of ordinary care in the course of handling that money.

126. As alleged in the foregoing particulars the Defendant utterly, totally and completely disregarded and therefore breached any and all duties it had to the Plaintiff.

127. The Defendants' patent and flagrant intentional and callous disregard of the duties it owed the Plaintiff constitute a breach of the Plaintiff / Defendant contract.

128. Occasioned on its breach of its contract with the Plaintiff, the Defendant maliciously, willfully, and wantonly inflicted on the Plaintiff substantial financial damage and injury

130. The Defendant's conduct evidences a reckless disregard of the Plaintiff's rights inflicting upon the Plaintiff humiliation, a sense of outrage, and indignity such that in addition to compensatory damages, exemplary damages are fully and justly appropriate.

**WHEREFORE** Plaintiff **FREDERICK F. BUTTERS** demands judgement against Defendant **THE AMERICAN ARBITRATION ASSOCIATION** in an amount borne by the evidence together with interest, exemplary damages, costs and attorneys' fees wrongfully incurred in the course of formulating and prosecuting this cause.

<u>**Count    II**</u>
<u>**Negligence**</u>

131. The plaintiff re-alleges the substance of paragraph(s) 1 through 130 above, as if such were set out and repled verbatim herein.

132. For 30 years the Plaintiff contracted with the Defendant to allow himself to be listed as one of the Defendant's panel arbitrators

133. Over that period of time the Plaintiff successfully and competently completed all of the training the Defendant required, in many cases paying the Defendant for the privilege of accessing that training material.

134. The Plaintiff promptly and fully paid every annual assessment the Defendant

18

required as a condition to serving on the Defendant's panel of arbitrators, including for several years when he was not assigned as an arbitrator at all

135.   In total the Plaintiff paid the Defendant thousands of dollars in exchange for being listed on the Defendants' panel(s)

136.   Over the past 30 years the Plaintiff has been assigned several cases and has faithfully and unwaveringly conducted each and every assignment he received in a proper and timely manner consistent with all of the Defendants' requirements

137.   The Defendant earned substantial income itself on account of the Plaintiff's efforts.

138.   The Plaintiff has fully honored all obligations imposed on him under his contract with the Defendant and otherwise

139.   In addition to listing the plaintiff as a potential arbitrator for various cases the plaintiff's contract with the defendant required the defendant to invoice parties, receive and account for payments, and forward to the plaintiff what he was owed for his services.

140.   In addition to listing the plaintiff as a potential arbitrator for various cases the Defendant was required to make its case administrator available to the Plaintiff and to engage with the Pefendant to assist if or as issues arose during the pendency of on-going arbitration proceedings.

141.   In the course of handling the Plaintiff's monies and administering arbitration proceedings on which the Plaintiff was assigned, the Defendant owed the Plaintiff a duty of ordinary care in the course of handling that money and conducting that administration

142.   As alleged in the foregoing particulars the Defendant utterly, totally and completely disregarded any and all duties it had to the Plaintiff including but not limited to

19

making substantial payments to a third party instead of the Plaintiff while conducting absolutely no investigation into whether directing payment in such a manner was appropriate.

143. The Defendants' patent and flagrant and callous disregard of the duties it owed the Plaintiff constitute a breach of those duties

144. The Defendant's breach of the duties it owed the Plaintiff constitute both simple and gross negligence as those term are defined by applicable law.

145. Occasioned on its negligence, the Defendant maliciously, willfully, and wantonly inflicted on the Plaintiff substantial financial damage and injury

146. The Defendant's conduct evidences a reckless disregard of the Plaintiff's rights inflicting upon the plaintiff humiliation, a sense of outrage, and indignity such that in addition to compensatory damages, exemplary damages are fully and justly appropriate.

**WHEREFORE** Plaintiff **FREDERICK F. BUTTERS** demands judgement against Defendant **THE AMERICAN ARBITRATION ASSOCIATION** in an amount borne by the evidence together with interest, exemplary damages, costs and attorneys' fees wrongfully incurred in the course of formulating and prosecuting this cause.

## Count    III
## Intentional Infliction of Emotional Distress

147. The Plaintiff re-alleges the substance of paragraph(s) 1 through 146 above, as if such were set out and repled verbatim herein.

148. The Defendant is aware that the plaintiff is a small Practitioner and that his ability to absorb significant and unjustified shortages and losses in payment is limited

149. The Plaintiff reiterated the level of stress non-payment was causing during the zoom conference between the Plaintiff and the Defendant's case administrator and

20

finance director.

150. The Plaintiff advised the Defendants' case administrator and in-house counsel that non-payment was exacerbating stress-related health conditions.

151. Nevertheless, possessed of the knowledge as alleged above, the Defendant intentionally refused to make the outstanding payments, refused to even consider failures in its own conduct, attempted to deflect and cover up its own conduct, made excuses, and blamed the Plaintiff

152. In the context of the Defendant's knowledge of the Plaintiff's circumstances, and in light of the Plaintiff's 30-year record of substantial and unblemished service to the defendant, the Defendant's conduct was unexpected, unprecedented, extreme and outrageous

153. Although the Defendant represented that it would endeavor to recover the missing funds and would only pay them over to the Plaintiff if it were successful

154. Although the Plaintiffs' recovery is not dependent on the ability of the Defendant to recover the funds it mishandled, that representation is a pretext and excuse and in fact it has made no credible effort, and indeed no effort whatsoever, to actually recover any funds.

155. The Defendant either knew, intended and expected that its conduct would cause the Plaintiff severe and substantial distress or under the circumstances should have known that severe and substantial distress would be the inevitable result.

156. The Defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized business community and the community in general.

21

157.    The Defendant's conduct has caused the Plaintiff to suffer and continue to suffer severe and entirely unjustified mental anguish, humiliation and distress together with significant and unjustified expenses.

158.    The Defendant's foregoing conduct together with the predictable, natural and inescapable consequences thereof constitute actionable intentional infliction of emotional distress as that term is defined by applicable law.

159.    Occasioned on its extreme and outrageous conduct, the Defendant maliciously, willfully, and wantonly inflicted on the Plaintiff substantial financial damage and injury.

**WHEREFORE** Plaintiff **FREDERICK F. BUTTERS** demands judgement against Defendant **THE AMERICAN ARBITRATION ASSOCIATION** in an amount borne by the evidence in excess of Two Hundred and Fifty Thousand Dollars ($250,000.00) together with interest, exemplary damages, costs and attorneys' fees wrongfully incurred in the course of formulating and prosecuting this cause.

## Count    IV
## Breach of Trust

160.    The plaintiff re-alleges the substance of paragraph(s) 1 through 159 above, as if such were set out and repled verbatim herein.

161.    The Defendant has a policy of maintaining strict, rigid, exclusive and absolute control over the finances for all matters it administers.

162.    Pursuant to the Defendants' policy the Defendant alone invoices parties for arbitrator compensation and receives payment from the parties for arbitrator compensation.

163.    Pursuant to the Defendants' policy the arbitrator or arbitrators assigned to an

22

arbitration proceeding have no direct contact with the parties regarding finances but instead submit periodic invoices to the Defendant for services rendered on that arbitration proceeding.

164. The Defendant maintains billing guidelines and conducts a review of arbitrator invoices for conformance with those guidelines.

165. Upon payment by the parties of compensation owed to an arbitrator the Defendant retains such payment until the arbitrator has submitted an invoice to the Defendant and that invoice has been approved by the Defendant.

166. Funds paid to the Defendant by parties on account of arbitrator compensation are not the property of the Defendant but instead are the property of the arbitrator, in this instance the property of the Plaintiff. Such funds are merely held by the Defendant for the benefit of the arbitrator, in this instance the Plaintiff.

167. The funds paid to the Defendant by parties on account of the Plaintiff's compensation are therefore impressed with a trust for the benefit of the Plaintiff.

168. The Defendant is therefore the trustee of the funds paid to the Defendant by parties on account of arbitrator compensation, with the arbitrator for whose service they were paid being the beneficiary.

169. The trusteeship is created by the operation of the Defendants' own policies regarding finances.

170. Where a party creates or accepts a trusteeship, the trustee shall administer the trust in good faith, expeditiously, in accordance with its terms and purposes, exclusively for the benefit of the trust beneficiary and in a manner solely in the best interests of the trust beneficiary.

171.   As the trustee of the Plaintiffs' funds the Defendant had a duty to exercise reasonable care, skill, and caution in administering the funds impressed with the trust and conduct proper oversight together with all investigations necessary to preserve and safeguard the Plaintiff's funds before paying any funds over in any manner.

172.   In the particulars as alleged above the Defendant was presented with a different and questionable request concerning payment of the Plaintiff's funds

173.   In the particulars as alleged above the defendant abjectly, grossly, completely and utterly breached the duties it held as trustee of the plaintiffs' funds.

174.   Without conducting any investigation or inquiry of any sort whatsoever, the Defendant completely disregarded its duties as a trustee and actually paid the Plaintiffs' funds over to an unknown third party fraudster, and then had the abject audacity to blame the Plaintiff for doing so.

175.   The Defendants' conduct constitutes a negligent if not intentional breach of the trust impressed on the Plaintiff's funds with which it was entrusted

176.   Occasioned on its breach of trust, the Defendant maliciously, willfully, and wantonly inflicted on the Plaintiff substantial financial damage and injury.

177.   The defendant's conduct evidences a reckless disregard of the Plaintiff's rights inflicting upon the plaintiff humiliation, a sense of outrage, and indignity such that in addition to compensatory damages, exemplary damages are fully and justly appropriate.

**WHEREFORE** Plaintiff **FREDERICK F. BUTTERS** demands judgement against Defendant **THE AMERICAN ARBITRATION ASSOCIATION** in an amount borne by the evidence together with interest, exemplary damages, costs and attorneys' fees wrongfully incurred in the course of formulating and prosecuting this cause.

24

## Count    V
## Breach of Fiduciary Duties

178.    The plaintiff re-alleges the substance of paragraph(s) 1 through 177 above, as if such were set out and repled verbatim herein.

179.    A fiduciary relationship arises when the beneficiary places trust and confidence in the fiduciary to act in their best interest.

180.    The Defendant created a fiduciary relationship with the Plaintiff by virtue of its adhesive policy and practice of holding and retaining owed to the Plaintiff and the Plaintiff held trust and confidence that the Defendant would administer the funds he earned but which it held exclusively in his best interests

181.    As a consequence of its role as fiduciary for the Plaintiff the Defendant created, the Defendant was subject to a number of specific duties, including but not limited to;

181a.  A duty of care which required the Defendant to use due diligence to investigate and acquire thorough information before making a decision that could impact the Plaintiff.

181b.  A duty of loyalty which required the Defendant to use reasonable prudence when making decisions that affect the Plaintiff.

181c.  A duty of good faith which required the Defendant to act exclusively in the best interests of the Plaintiff, take all actions that benefit the Plaintiff, and do so without any conflict, and without regard to the Defendants' consequences or gain.

181d. A duty of confidentiality which required the Defendant to avoid using information that pertains to the Plaintiff for its own gain.

181e. A duty of prudence that required the Defendant to make all decisions for the benefit of the Plaintiff with the highest degree of care, caution, and skill.

181f.  A duty to disclose which required the Defendant to disclose to the Plaintiff all

25

information that could impact him and / or the Defendants' ability to uphold its fiduciary duties to the plaintiff.

182.   The defendant breached the fiduciary duties it owed the plaintiff including in but not limited to the following particulars:

183.   The Defendant abjectly failed, neglected and refused to conduct any investigation or use any cognizable degree of diligence or care when presented, for the very first time in 30 years, with a request to pay monies the Defendant held that were the property of and owed to the Plaintiff to someone other than the Plaintiff himself.

184.   The Defendant abjectly failed, neglected and refused to employ any cognizable degree of prudence in the course of making decisions to pay monies owed to the Plaintiff over to someone other than the Plaintiff himself.

185.   The Defendant abjectly failed, neglected and refused to take all actions that would benefit the Plaintiff and act exclusively in the best interests of the Plaintiff.   Instead, when confronted with the consequences of its gross and woeful failures the Defendant acted in bad faith and opted to try and deflect attention away from its conduct, blaming the Plaintiff himself for the Defendants' own shortcomings and failures.

186.   The Defendant abjectly failed, neglected and refused to refrain from using information regarding the Plaintiff for its own gain.   Instead, despite being fully possessed of the knowledge regarding the pressure and distress its conduct created, the Defendant sought to exacerbate that pressure and distress by deflecting attention away from its conduct and blaming the Plaintiff himself for the Defendants' own shortcomings and failures.

26

187.   The Defendant abjectly failed, neglected and refused to disclose to the Plaintiff and verify and confirm with him that for the very first time in 30 years, an ostensible request to pay monies the defendant held that were owed the Plaintiff to someone other than the Plaintiff himself.

188.   The Defendants' conduct and failures including in but not limited to the foregoing regards constitute a gross breach of the fiduciary duties it owed the Plaintiff.

189.   Occasioned on its breach of fiduciary duties, the Defendant maliciously, willfully, and wantonly inflicted on the Plaintiff substantial financial damage and injury.

190.   The Defendant's conduct evidences a reckless disregard of the Plaintiff's rights inflicting upon the Plaintiff humiliation, a sense of outrage, and indignity such that in addition to compensatory damages and other equitable damages, exemplary damages are fully and justly appropriate.

**WHEREFORE** Plaintiff **FREDERICK F. BUTTERS** demands judgement against Defendant **THE AMERICAN ARBITRATION ASSOCIATION** in an amount borne by the evidence together with interest, exemplary damages, costs and attorneys' fees wrongfully incurred in the course of formulating and prosecuting this cause along with any and all other relief consistent with equity and principles of justice and fair play.

Respectfully Submitted
FREDERICK F. BUTTERS, PLLC

Dated, January 2, 2025            BY:     /s/ Frederick F. Butters
Frederick F. Butters (P45426)
FREDERICK F. BUTTERS, PLLC
  Attorney for Plaintiff
26677 West 12 Mile Road
Southfield, Michigan 48034
(248) 357-0831
fred@butters-law.com

27

## **Index to Exhibits**

| Exhibit Number | Description |
| --- | --- |
| 1 | Defendant's alleged Direct Electronic Deposit Form dated July 29, 2024 |

# Exhibit        1

# DIRECT DEPOSIT PANELIST AUTHORIZATION FORM

**ALL FIELDS MUST BE COMPLETE. ANY MISSING CRITERIA WILL DELAY THE PROCESS FOR DIRECT DEPOSIT ACTIVATION.**

I authorize the American Arbitration Association, hereafter referred to as "Company", to direct deposit funds to my account with the financial institution provided below. If funds that I am *not* entitled are deposited into my account, I authorize the initiation of an electronic correction (debit) entry or a correction by any other commercially accepted method.

I understand that this direct deposit authorization may be rejected or discontinued at any time. If any of the below information changes, I will promptly complete a new authorization agreement. If I do not terminate the direct deposit before closing the account indicated below, funds payable to me will be returned to the Company for distribution, and my payment will be delayed.

**The account below belongs to:**   Individual Panelist [ ]   Company/Firm [✓]

**Choose *one* of the following actions:**   Start Deposits [ ]   Stop Deposits [ ]   Change Account [✓]

**Type of Account:**   Savings [ ]   Checking [✓]

**Financial Institution (Bank) Name:** WELLS FARGO BANK

**City:** MIDDLETOWN   **State:** DE   **Zip:** 19709   **Phone:** 503-643-4876

**ABA Bank Routing Number (must be 9 numbers)**   **Account Number (not to exceed 17 numbers)**

1 2 1 0 0 0 2 4 8      4 0 6 3 0 2 4 6 4 3 4 5 1 0 6 5 2

Enter the above information from the bottom of your check or savings deposit slip as shown (no spaces). Do not include the check number.

RASAL BASIL ACCOUNTING LLC      07/29/2024
**Account Holder's Name**      **Date**

141480      248-514-4349
**Panel ID (found on the Panelist eCenter's welcome page)**      **Phone Number**

Rasal.Basil@accountant.com
**Remittance E-mail**
Note: Updating your e-mail in eCenter will *not* update your ACH remittance e-mail. You will need to submit a separate request.

I, the Panelist/Firm, understand that by submitting this form, compensation or expense payments selected for ACH disbursement will be deposited into the above institution.

**ALL FORMS MUST BE SUBMITTED TO THE AMERICAN ARBITRATION ASSOCIATION'S SHAREFILE SITE WHICH CAN BE ACCESSED BY CLICKING HERE**
**DIRECT DEPOSIT PANELIST AUTHORIZATION FORMS WILL NOT BE ACCEPTED VIA E-MAIL, MAIL, OR FAX.**